Anna K. Schneider
Montana Attorney General's Office
Bureau Chief
Office of Consumer Protection
P.O. Box 201405
Helena, MT 59620-1405
(406) 444-4500
anna.schneider@mt.gov

*Counsel for Plaintiff State of Montana*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| STATE OF MONTANA, *ex rel.* AUSTIN KNUDSEN, ATTORNEY GENERAL <br><br> PLAINTIFFS, <br> V. <br><br> META PLATFORMS, INC., INSTAGRAM, LLC, FACEBOOK HOLDINGS, LLC, FACEBOOK OPERATIONS, LLC, META PAYMENTS INC., META PLATFORMS TECHNOLOGIES, LLC, SICULUS, INC., <br><br> DEFENDANTS. | Cause No.  CV-23-145-BLG-SPW-TJC |

## **COMPLAINT**

1.     Instagram is a social media platform that allows users to share content through photographs, videos, public comments, and private messages. When making the Instagram app

2

available to Montana users in Apple's App Store and other online marketplaces, Defendants[1] tell consumers that Instagram contains only "infrequent/mild" "profanity and crude humor," "alcohol, tobacco, and drug use or references," "sexual content or nudity," and "mature/suggestive themes." Instagram then claims a "12+" rating in the App Store, which tells consumers the app is suitable for users aged 12 and older. Similarly, Instagram claims a "T for Teen" rating in the Google Play and Microsoft Stores. Defendants know and intend that all of these representations will be conveyed to Montana consumers.

2.      These representations are patently false. Defendants allow rampant profanity, sexual content and nudity, alcohol, tobacco, and drug use and references, and mature/suggestive themes on the Instagram platform, including readily accessible hardcore pornography. Defendants use human and computer moderators to police the content on Instagram, but those moderators either systematically fail or apply internal policies that allow these types of content to remain on the platform. Whether by design or by failure, Defendants' moderators miss large amounts of mature content on Instagram, leaving young Montanans regularly exposed to it.

3.      Accounts registered to thirteen-year-olds may view sexually suggestive images, "sex tips," kink-related content, marijuana and tobacco use, recipes for making vodka taste like candy, and explicit and profane songs accessible as both songs that can be played on demand, and paired with video content throughout the Instagram app. In fact, countless Instagram accounts host pornography, which is accessible to children with just a few clicks. Instagram was designed to encourage addictive and compulsive use by children and teens, and encourages eating disorders,

---

[1] Defendants are referred to collectively as "Defendants" or "Meta" or "Instagram" throughout this petition. The word "Instagram" is used to refer both to the Defendant entities and to the Instagram platform.

self-harm, depression and anxiety, and suicide, especially in girls and young women. Instagram presents young users with content explicitly referencing and even promoting self-harm and suicide.

4.     Defendants are aware that their platform hosts an enormous library of mature content and that their platform's algorithms routinely recommend this content to Instagram's youngest users. Yet they continue to misrepresent Instagram's content to consumers in the App Store, Google Play Store, and the Microsoft Store. Defendants omit material details that parents and Instagram users care about, and they offer misleading statements about what appears on the platform. Montana consumers rely on Defendants' misleading statements to their detriment.

5.     Additionally, Instagram's Community Guidelines and other public statements misrepresent the content available on Instagram.

6.     Defendants also unlawfully collect the personal data of young Montana users without their parents' consent, as required by the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. § 6501, ch. 91, *et seq*. Defendants have actual knowledge that children under the age of 13 use Instagram yet fail to secure the parental consent required by COPPA.

7.     Pursuant to 15 U.S.C § 6504(a)(2), the State notified the Federal Trade Commission of this action.

8.     The State of Montana seeks a preliminary and permanent injunction to compel Instagram to cease its deceptive and unfair statements about the frequency and severity of alcohol, tobacco, and drug content, sexual content, nudity, mature/suggestive themes, and profanity on the Instagram platform, its inaccurate age-ratings in the App Store and other online marketplaces, and its deceptive public assurances in the Instagram Community Guidelines and elsewhere.

9.     The State of Montana also seeks a permanent injunction to compel Instagram to comply with the parental consent provisions of COPPA.

10.    The State of Montana further seeks civil penalties for Instagram's deceptive and unfair statements and conduct, which has harmed and continues to harm Montana consumers.

## JURISDICTION AND VENUE

11.    This Court has federal question jurisdiction over the State's claim arising under federal law pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(a) because all claims form part of the same case or controversy.

12.    Defendants operate social media applications and platforms that they have purposefully directed to operate in the State of Montana within the applicable statute of limitations. The Instagram app has been downloaded and activated by a device located in Montana at least hundreds of thousands of times. Defendants are actively serving content to and collecting data from all of those devices and accounts located in Montana.

13.    Defendants use data collected from Montana users to serve content to users in Montana. For example, Instagram advises users that it "use[s] location-related information, such as your current location, where you live, the places you like to go and the businesses and people you're near" to recommend content.[2]

14.    Instagram also uses the location information of its users to personalize advertisements. For example, based on a user's location, Meta can show the user "ads for businesses nearby."[3]

---

[2] *Meta Privacy Policy - How Meta collects and uses user data*, META: PRIVACY CENTER (June 15, 2023), https://bit.ly/3uFCwbD; *see also Meta United States Regional Privacy Notice*, META: PRIVACY CENTER (July 1, 2023), https://bit.ly/3GHojxH.

[3] *Meta Privacy Policy - How Meta collects and uses user data*, META: PRIVACY CENTER (June 15, 2023), https://bit.ly/3uFCwbD.

15.     Meta permits consumers to earn money through Instagram and Facebook, and even directly pays some users, called "creator[s]," financial bonuses.[4]

16.     Instagram allows users to purchase monetary gifts, which they can send to other users. Instagram users "can purchase stars and use them to send [creators] gifts on Instagram. Instagram will then provide [creators] with a revenue share from [their] reels that received gifts on a monthly basis equal to $.01 USD for every star received from fans."[5]

17.     When Montana consumers register to use the Instagram app, they enter a contract with Instagram, known as the Terms of Use. The contract is supported by consideration: "Instead of paying to use Instagram," users gain access to the Instagram app and platform, and in consideration for that benefit, they "acknowledge that [Meta] can show [the user] ads that businesses and organizations pay [Meta] to promote on and off the Meta Company Products."[6] Meta admits: "We use your personal data, such as information about your activity and interests, to show you ads that are more relevant to you."[7] The Terms of Use contracts require that Montana users grant Instagram contractual permission to collect location information, "even if Location Services is turned off in your device settings," "includ[ing] . . . IP addresses to estimate your general location."[8] The Policy also informs users that Meta may receive and use information about

---

[4] *Earn Money with Badges*, INSTAGRAM HELP CENTER (last visited Nov. 30, 2023), https://bit.ly/3RmRPia.

[5] *How to earn money on Instagram Gifts*, INSTAGRAM HELP CENTER (last visited Nov. 30, 2023), https://bit.ly/3RIL8gb; *How To Send Gifts on Instagram Reels*, INSTAGRAM HELP CENTER (last visited Nov. 30, 2023), https://bit.ly/47DWpyg.

[6] *Terms of Use*, INSTAGRAM HELP CENTER (July 26, 2022), https://bit.ly/410agwa.

[7] *Id.*

[8] *Meta Privacy Policy - How Meta collects and uses user data*, META: PRIVACY CENTER (June 15, 2023), https://bit.ly/3uFCwbD.

their other online and offline activity outside of Meta products.[9] Users "must agree to the Privacy Policy to use Instagram."[10]

18.     Instagram Shopping allows users to shop for and purchase items inside of the Instagram app. These items will be shipped to the user, including users in Montana.

19.     Defendants have availed themselves of the benefit of transacting business in Montana through the marketing, sale, and operation of a well-known social media and advertising network. Defendants are aware of their presence in Montana and the financial rewards they receive from operating within the State of Montana. Defendants can attribute, at a minimum, millions of dollars in revenue to activities in the State of Montana.

20.     Venue is proper under 28 U.S.C. § 1391(b).

## PARTIES

21.     Plaintiff is the State of Montana, *ex rel.* Austin Knudsen, Attorney General. Pursuant to Mont. Code § 30-14-111(1), the State may seek civil enforcement of the Montana Consumer Protection Act, including injunctive relief.

22.     Defendant Meta Platforms, Inc. ("Meta"), formerly known as Facebook, Inc., is a Delaware corporation with its principal place of business in Menlo Park, California. Meta, both through its own acts and through its subsidiaries, develops, advertises, operates, and makes available to Montana consumers internet-based social media products including Facebook, Instagram, Messenger, and WhatsApp.

23.     Meta's subsidiaries include Instagram, LLC; Facebook Holdings, LLC; Facebook Operations, LLC; Meta Payments Inc.; Meta Platforms Technologies, LLC; and Siculus, Inc.

---

[9] *Id.*

[10] *Terms of Use*, INSTAGRAM HELP CENTER (July 26, 2022), https://bit.ly/410agwa.

24.     In 2012, Meta purchased Instagram for the reported sum of one billion dollars.

25.     Instagram, LLC, a wholly owned subsidiary of Meta, is a limited liability company incorporated in Delaware with its principal place of business in Menlo Park, California.

26.     Facebook Holdings, LLC, a wholly owned subsidiary of Meta, is a Delaware limited liability company with its principal place of business in Menlo Park, California. Facebook Holdings is the primary holding company for entities involved in Meta's commercial activities. Defendant Meta Platforms is the sole member of Facebook Holdings.

27.     Facebook Operations, LLC is a Delaware limited liability company with its principal place of business in Menlo Park, California. Defendant Meta Platforms is the sole member of Facebook Operations.

28.     Meta Payments, Inc. is incorporated in the State of Florida with its principal place of business in Menlo Park, California. Meta Payments processes and manages all payments made in the Meta platforms. Meta Payments is a wholly owned subsidiary of Meta Platforms and Defendant Meta Platforms is the sole member of Meta Payments.

29.     Meta Platforms Technologies, LLC is a Delaware limited liability company with its principal place of business in Menlo Park, California. Originally organized as "Oculus VR, LLC", and previously known as Facebook Technologies, LLC, Meta Technologies was acquired by Meta in 2014. Meta Technologies develops Meta's virtual and augmented reality technology, such as the Meta Quest line of services, among other technologies related to Meta's platforms. Defendant Meta Platforms is the sole member of Meta Technologies.

30.     Siculus, Inc., a wholly owned subsidiary of Meta, is a Delaware corporation with its principal place of business in Menlo Park, California. Siculus constructs data facilities and otherwise supports the Meta platforms. Defendant Meta is the sole member of Siculus.

31.     Meta formulated, directed, controlled, had the authority to control, knew about, should have known about, or participated in the material acts and practices alleged herein.

32.     Defendants operate as a common enterprise, each of them jointly and severally liable for the acts and practices alleged herein.

## FACTUAL ALLEGATIONS

33.     Instagram is a social media platform that centers on photos and short videos (called "Reels") created, uploaded, and shared by users. Instagram users can also interact with one other through one-to-one or group messaging, follow other users, shop for trending items, and search for content on the platform.

34.     Instagram is available as an application ("app") to download on smartphones and tablets, and most Instagram users interact with the platform that way. Users can download the Instagram application from the Apple App Store, the Google Play Store, or the Microsoft Store.

35.     Instagram is both hugely popular and hugely profitable. Instagram has 1 billion active users. An estimated 72 percent of teens in the United States regularly use Instagram.[11] By 2021, Instagram's revenues surpassed $45 billion, and Instagram was recently valued at over $100 billion.[12]

36.     Defendants seek to attract children and teens to Instagram because they see children as lifelong customers that set trends and are more likely to be influenced by ads.

37.     When someone registers to use Instagram, the user must provide a birthday. A user can only access the regular Instagram platform if the birthday provided indicates that the user is

---

[11] Katherine Schaeffer, *7 facts about Americans and Instagram*, PEW RESEARCH CENTER (Oct. 7, 2021), https://pewrsr.ch/3RkzEd0.

[12] Emily McCormick, *Instagram Is Estimated to Be Worth More than $100 Billion*, BLOOMBERG (June 25, 2018), https://bloom.bg/3T5jt4y.

13 years old or older. This means that Instagram knows which users have told Instagram they are 17 years old or younger.

38.     A user lands on Instagram's "Feed" when opening the app. The "Feed" is a never-ending stream of photos and advertisements personalized for the user by Instagram's algorithm.

39.     Instagram users can also search for content on Instagram using keywords and hashtags. When a user types into Instagram's search bar, Instagram's "Autofill" function will suggest search results.

40.     Defendants' products are known to be addictive and harmful to young people; they were made that way by design. Defendants designed their products to encourage addictive and compulsive use. Such features include: (1) audiovisual notifications that interrupt a young user at any time of the day or night, popping up and encouraging an immediate return to the app; (2) an infinite scroll and autoplay feature, meaning the young user will never reach the "end" of the content to be viewed and the content will continue to play automatically; (3) a disappearing content feature known as "stories," requiring a user to view the content of a follower within a certain period of time before it disappears; (4) the quantification and display of "likes" below posts; and (5) an algorithmic content feed targeted to the particular user, including content from accounts the user follows, accounts the user does not follow, and advertisements. These features promote social competition to prey on a young user's fear of missing out on content. Defendants also encourage the use of filters—for example, "beauty filters" that distort an image with slightly altered and more "beautiful" features, while failing to alert users when an image or video has been distorted by a filter. These features together strongly encourage young users' compulsive and harmful use of Instagram.

41.    Meanwhile, Defendants fail to provide several key protective features. For example: (1) Defendants fail to provide effective parental control features, including a notification to parents when children are using the platforms; (2) Defendants provide no option for users to self-restrict the time spent on an app; (3) Defendants make it challenging for users to delete their accounts; and (4) Defendants have failed to implement reporting protocols to allow users to report certain harmful accounts without the need to create or log in to the products.

42.    Instagram publishes "Community Guidelines," a set of rules for what content users are allowed to post on Instagram. Instagram relies on content moderation to police the Community Guidelines. Moderation is carried out through artificial intelligence and human moderators.[13]

43.    Although Instagram does not charge a fee per download for most users, Meta does not provide Instagram or its other products for free. Rather, users download and use Instagram in exchange for valuable consideration: their personal data and time, which secures Meta significant advertising revenues.

44.    Some users do pay to use Instagram, as Defendants offer a "verified" feature for certain premium features, including a blue check mark by the account name. "Meta Verify costs $14.99/month for verification on the Facebook or Instagram app and $11.99/month to be verified on Facebook's web version."[14]

45.    Instagram's Terms of Use, a contract with users, makes this clear. Instagram states: "Instead of paying to use Instagram, by using the Service covered by these Terms, you acknowledge that we can show you ads that businesses and organizations pay us to promote on

---

[13] *How Instagram Uses Artificial Intelligence to Moderate Content*, INSTAGRAM HELP CENTER (last visited Nov. 30, 2023), https://bit.ly/3TbHBCq.

[14] Jada Jones, *Are You Meta Verified? Here's What It Is, How Much It Costs, And What Perks It Gets You*, ZDNET (Mar. 27, 2023), https://zd.net/410rcmu.

and off the Meta Company Products. We use your personal data, such as information about your activity and interests, to show you ads that are more relevant to you."[15]

46.     The Instagram Shopping feature allows businesses to advertise and sell goods directly to consumers in the Instagram app, which users can purchase and pay for directly in the Instagram platform.[16]

47.     Meta's Creator Monetization Tools allows users to make money through Instagram and Facebook.[17]

48.     Meta is continuously targeting young users by expanding into new platforms beyond Instagram, including Meta's Metaverse, where users are immersed into a virtual world, and Meta's communication platforms like WhatsApp and Messenger.

<strong>APPLE'S APP STORE</strong>

49.     Apple requires Defendants to answer an age-rating questionnaire when they submit the Instagram app to be included in Apple's App Store. Apple says that apps that host user-generated content (like Instagram) "should share the age rating of the highest age-rated creator content available in the app[.]" *App Store Review Guidelines*, APPLE (June 5, 2023), https://apple.co/3GofRTO.

50.     Apple's age-rating questionnaire asks Defendants to self-select the answer "none," "infrequent/mild," or "frequent/intense" to describe the content available on the Instagram app in each of the following categories: "Alcohol, Tobacco or Drug Use or References," "Sexual Content or Nudity," "Mature/Suggestive Themes," and "Profanity or Crude Humor." Based on the self-

---

[15] *Terms of Use*, INSTAGRAM HELP CENTER (July 26, 2022), https://bit.ly/410agwa.

[16] *Instagram Shopping Helps You Reach New Customers*, META (last visited Nov. 30, 2023), https://bit.ly/3N8vCSB.

[17] Aisha Malik, *Meta To Roll Out New Monetization Tools on Instagram and Facebook, Including a Creator Marketplace*, TECHCRUNCH (June 21, 2022), https://tcrn.ch/3uECJvy.

selected answers to these questions, Apple suggests an age-rating. Apple also offers every app developer (including Defendants) the option to self-select a higher age rating than the one Apple suggests.

51.    In each of the categories just listed, Defendants self-select the answer "infrequent/mild." By doing so, Instagram chooses to have the following statements displayed on its page in the App Store:

"Infrequent/Mild Profanity or Crude Humor"

"Infrequent/Mild Mature/Suggestive Themes"

"Infrequent/Mild Sexual Content and Nudity"

"Infrequent/Mild Alcohol, Tobacco, or Drug Use or References"[18]

52.    Because of its "infrequent/mild" answers, Defendants also cause Apple to offer a "12+" age rating option. Apple defines apps with the "12+" age rating as apps that "may also contain infrequent mild language, frequent or intense cartoon, fantasy, or realistic violence, infrequent or mild mature or suggestive themes, and simulated gambling, which may not be suitable for children under the age of 12." Meta chooses to rate the Instagram app "12+."

53.    The next higher (and highest) age rating is "17+." Apple offers Defendants the option to choose a "17+" age rating, but Defendants have never done so. Apple defines apps with the "17+" age rating as apps that "may also contain frequent and intense offensive language, frequent and intense cartoon, fantasy, or realistic violence, and frequent and intense mature, horror, and suggestive themes; plus sexual content, nudity, alcohol, tobacco and drugs which may not be suitable for children under the age of 17."

54.    Instagram is responsible for its age rating in the App Store.

---

[18] *Instagram*, APPLE APP STORE (last visited Nov. 30, 2023), https://apple.co/3R4Qtao.

55.     Defendants continue to improperly claim a "12+" rating for the Instagram app, because Instagram contains frequent: profanity or crude humor; alcohol, tobacco, and drug use or references; sexual content or nudity; and mature/suggestive themes. Instagram also contains intense: profanity or crude humor; alcohol, tobacco, and drug use or references; sexual content or nudity; and mature/suggestive themes. Users are presented with this content in their algorithmically-driven Feed without having searched for it, including users registered as only 13 years old. Users can also search for and find this content on Instagram, including users registered as only 13 years old. Photos and videos containing these kinds of content receive millions—even hundreds of millions—of views. Users who type only a few letters into Instagram's search bar will be presented with search suggestions that reference profanity or crude humor, alcohol, tobacco, and drugs, sexual content or nudity, and mature/suggestive themes.

56.     Defendants are aware of these problems. Instagram uses content moderators to detect and remove content from its platform that violate its policies, but these efforts do not cause (1) alcohol, tobacco, and drug use or references, (2) sexual content and nudity, (3) mature/suggestive themes, or (4) profanity and crude humor to be "infrequent/mild" on the platform. Rather, a substantial amount of content inconsistent with each of Instagram's age-rating representations is available on Instagram to all users, including those who register as only 13 years old.

*Profanity or crude humor.*

57.     Profanity is not infrequent/mild on Instagram. Instagram permits substantial profanity and fails to even attempt to filter profane words in its in-app search function or in

usernames of profiles on the platform. Further, Instagram permits explicit versions of songs, including videos set to explicit music.

58.     The State's own research using a test account reveals that profanity is rampant on Instagram. Instagram reels are often set to music, yet profanity in song lyrics is not censored at all. Lyrics like: "Sex in the air, I don't care I love the smell of it;" and "Before I die I'm tryna fuck you baby, hopefully we don't have no babies" played without any warning. In videos, creators frequently use words like "fuck," "pussy," "ass," "bitch," and "cunt."

59.     Despite all of this, Defendants tell consumers in the App Store that "profanity or crude humor" is "infrequent/mild" on the platform. That representation is deceptive and unfair.

*Alcohol, tobacco, and drug use or references.*

60.     Alcohol, tobacco, and drug use or references are not "infrequent/mild" on Instagram.

61.     An investigative report by the Digital Citizens Alliance revealed that drugs are bought and sold on Instagram. The report concluded that "Facebook-owned Instagram is the second most popular social media app with teens and the home to dealers peddling opioids."[19] "Particularly troubling was the fact that as researchers followed more drug dealers, Instagram's algorithms didn't stop it. Rather, the platform amplified the problem – pushing more drug sellers toward the researcher's account."[20] The investigative report included photos of drugs being advertised on Instagram:

---

[19] *Digital Weeds*, Digital Citizens Alliance, at 13 (2021), https://bit.ly/46Q5pzK (2021).
[20] *Id.* at 13.

15



IMAGES 14-16

Advertising for Chanel and The New York Times running by posts selling
drugs found on Instagram on September 4, 2020 and August 21, 2020

62.     The Digital Citizens Alliance also cataloged Instagram accounts devoted solely to

selling drugs:[21]

---

[21] *Id.* at 14.

**An Attempted Drug Sale in Progress on Instagram**



IMAGE 17

This account had 1,254 followers when it was found on July 21, 2020. It is still up today. After connecting with the CSW researcher, the account operator started a chat in which opioids were made available (see the chats on the next page).

63.     The report further evidenced the ease with which an Instagram user can purchase illegal drugs via Instagram's direct messaging platform.[22] For example:

---

[22] *Id.* at 15–16.



IMAGES 18-22

64.     Other investigative reporting revealed that "Instagram allows teen users as young as 13 to find potentially deadly drugs for sale in just two clicks, according to a Tech Transparency Project (TTP) investigation."[23] "Instagram says it prohibits buying and selling of drugs. But TTP found that minor users had access to a range of pharmaceuticals on the platform."[24] "TTP created multiple Instagram accounts for minors between the ages of 13 and 17 and used them to test teen access to controlled substances on the platform."[25] "Not only did Instagram allow the hypothetical teens to easily search for age-restricted and illegal drugs, but the platform's algorithms helped the underage accounts connect directly with drug dealers selling everything from opioids to party drugs."[26]

---

[23] *Xanax, Ecstasy, and Opioids: Instagram Offers Drug Pipeline to Kids*, TECH TRANSPARENCY PROJECT (Jan. 11, 2022), https://bit.ly/3rPRJG4.

[24] *Id.*

[25] *Id.*

[26] *Id.*

65.     TTP's investigation concluded:

> When a hypothetical teen user logged into the Instagram app, it only took two clicks to reach an account selling drugs like Xanax. In contrast, it took more than double the number of clicks—five—for the teen to log out of Instagram.
>
> Instagram bans some drug-related hashtags like #mdma (for the party drug ecstasy), but if the teen user searched for #mdma, Instagram auto-filled alternative hashtags for the same drug into the search bar.
>
> When a teen account followed a drug dealer on Instagram, the platform started recommending other accounts selling drugs, highlighting how the company's algorithms try to keep young people engaged regardless of dangerous content.
>
> Drug dealers operate openly on Instagram, offering people of any age a variety of pills, including the opioid Oxycontin. Many of these dealers mention drugs directly in their account names to advertise their services.[27]

66.     In conclusion, Instagram is "allowing drug dealers to do business on the platform, in violation of its Community Guidelines which prohibit the 'buying or selling non-medical or pharmaceutical drugs.' "[28] "What's more, Instagram allows teens—one of its most vulnerable user populations—to jump into this marketplace with no guardrails."[29]

67.     Even when Instagram is made aware of drug content that violates its Community Guidelines, it declines to remove the offending content. "During the course of TTP's investigation, our researchers submitted 50 posts to Instagram that appeared to violate the company's policies against selling drugs. After review, Instagram responded that 72% of the flagged posts (36) *did not* violate its Community Guidelines, despite clear signs of drug dealing activity."[30] "Instagram

---

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* (emphasis in original).

removed 12 of the posts and said it took down an entire account that had violated company policy. However, when TTP checked later, the account in question was still active (along with its violating post)."[31] "Among the content that Instagram determined did not violate its policies: [a] Xanax-selling account that made multiple unsolicited calls to [a] hypothetical teen user."[32]

68.    Instagram also knowingly exposes minors to alcohol content, including advertisements for alcohol. "Instagram allows accounts like alcohol brands to restrict content to people over a certain age, but it's entirely voluntary."[33]

69.    The State's own research using a test account reveals extreme alcohol content on Instagram. A user registered as a 13-year-old can search for the phrase "drinking game" and access several accounts dedicated to showcasing acts of binge drinking. One such account, for example, "frathouse_drinkinggames" depicts a young man on his knees, drinking out of an orange traffic cone while someone else stuffs several beers down the traffic cone.

70.    The State's investigation determined that tobacco and vaping content is also prevalent and extreme. Vapes are even advertised on Instagram, including to children as young as 13. One account dedicated to that practice advertised new colors and designs of vapes, and featured the claim of providing "12000 Puffs."

71.    The State's investigation also revealed that extreme drug content is rampant on Instagram. Drug content is easy to find and to access. Posts related to illegal drugs are often organized with an emoji (or cartoon image) of a pill or needle. Searching the pill and needle together reveals 21,500 posts. The needle emoji reveals 276,000 posts. A thirteen-year-old user can also search the word "weed" to see several accounts dedicated solely to showcasing marijuana

---

[31] *Id.*

[32] *Id.*

[33] *Id.*

use and promotion. Once in the world of illegal drugs on Instagram, a thirteen-year old can be exposed to the most extreme forms of drug-related images. For example, the State's test account was shown a video actually demonstrating intravenous drug use in real time, including the insertion of the needle into an arm. The video was captioned with the pill emoji and the hashtag "#trending." Thirteen-year-olds are also exposed to active marijuana use on video, with users smoking cigarettes and from bongs, shrouded in marijuana smoke. In one video, a scantily-clad woman danced suggestively in a hot tub to explicit song lyrics, holding up her middle finger, while smoking marijuana. Finally, because Instagram permits profanity and other harmful content in songs without any filtering, song lyrics also include references to drugs, like "I'm selling prescription cocaine."

72.     Based on the extensive public reporting of drug content available to children on Instagram, Defendants are aware that drug references are not "infrequent/mind" on Instagram.

73.     Despite all of this, Defendants tell consumers in the App Store that "alcohol, tobacco, and drug … references" are "infrequent/mild" on the platform. That representation is deceptive and unfair.

*Sexual content and nudity.*

74.     Sexual content and nudity on Instagram is not "infrequent/mild."

75.     A recent investigation by The Wall Street Journal and researchers at Stanford University and the University of Massachusetts Amherst uncovered extensive sexual content on Instagram, including readily accessible child pornography content. The researchers concluded that Instagram not only permits the access of child pornography on Instagram—it promotes it. "Pedophiles have long used the internet, but unlike the forums and file-transfer services that cater

to people who have interest in illicit content, Instagram doesn't merely host these activities. Its algorithms promote them."[34]

> The researchers found that Instagram enabled people to search explicit hashtags such as #pedowhore and #preteensex and connected them to accounts that used the terms to advertise child-sex material for sale. Such accounts often claim to be run by the children themselves and use overtly sexual handles incorporating words such as 'little slut for you.'[35]

"Certain [Instagram] accounts invite buyers to commission specific acts" with children, including "prices for videos of children harming themselves and 'imagery of the minor performing sexual acts with animals[.]' "[36]

76.    Pornography is available and easily accessible on Instagram. Instagram imposes no meaningful barriers to prevent children from being exposed to or searching for pornography.

77.    One method by which Instagram users post pornography on Instagram is "tagging." Instagram users can post explicit content on their own accounts, and then "tag" or make a connection to another account. Then, any other user who visits the "tagged" account can discover the account with sexually explicit posts with just one click.

78.    Instagram also contains an in-app browser that allows users to click on a link and view an external website without exiting Instagram. Users have been able to use this feature to link to a search engine, then search for and view hard core pornography—all without leaving the Instagram app.

---

[34] Jeff Horwitz & Katherine Blunt, *Instagram Connects Vast Pedophile Network*, WALL ST. J. (June 7, 2023), https://on.wsj.com/47zZI9O.

[35] *Id.*

[35] *Id.*

[35] *Id.*

[36] *Id.*

79.     Many Instagram accounts hosting pornography post links to pornographic websites in their account biography or "bio," which allows a user to click the link and open such sites within Instagram's in-app browser. Thus, a thirteen-year-old user of Instagram can easily use the Instagram app to search for and find pornography.

80.     Young users can use these features to access pornography through Instagram even if parental controls were enabled on their device and would otherwise have prevented the user from accessing this content on an ordinary web browser.

81.     The State's own research using a test account reveals that nudity, sexual content, and full-on pornography is widespread and easily accessed on Instagram. Examples abound. A search of hashtags including the phrase "nsfw" (with "nsfw" meaning "not safe for work," a code for sexually explicit content) reveals countless sexual videos. "Nsfwmemes," for example, reveals 29,600 posts. One video shows a young woman holding a sex toy between her legs with her legs spread open. Another shows a young woman in nothing but a thong with her nipples blurred. Sex acts are shown to thirteen-year-old users, often in cartoon form. In one video, a cartoon depicts a man fully nude, sitting on a chair with his legs spread open and his hand gripping his penis. Cartoon scenes of lesbian sex are easily accessible and left uncensored. One depiction shows two women fully nude, licking each other's nipples and rubbing their bodies together with no blurring. The caption read: "NSFW Use headphones." Cartoons also depict males having anal sex. Another cartoon shown to the State's test account depicted a young male tied up in a doctor's chair with his hands bound above his head. A male doctor inserts a sex toy into the boy's anus. The text on the image reads: "Relax for me a little, would you." Yet another shows a boy masturbating in bed with his legs bound, surrounded by bottles of lubricant.

82.     Pornographic content is not just depicted in videos and images on Instagram, but also in text. One post presented to the State's test account included the text: "Instead of calling me your daughter, you label me as a slut. In that case dad it's true I love to f*ck!" Another described "Phantom of the opera" as "[w]hen you cum on half of a girl's face and let it run down her face so she looks like a organ playing freak," and provided the example: "Last night after sex I turned my girl's face to the side while she was sleeping and gave her a Phantom of the Opera." Other posts described sexual scenes in detail. For example: "letting you hump my thigh, and making you cum on my lap. . . . good boy. wanna cum inside me now?" The post was captioned: "Yes please Mommy." Another example of written pornography on Instagram included:

> The dom pins one of her thighs to the bed. . . . As he gets the wand closer to her pussy. He grazes her clit slightly and just the mere second of contact, makes her clench. It feels like she might just orgasm again just by that second of that. Not giving her a chance to recover he presses the vibrator against her cunt again. She twitches and squirms around unable to handle the overwhelming pleasure as cries of satisfaction leave[] her mouth.

83.     Another Instagram post described a "Fauxcest kink," which is a way to describe a sexual interest in incestual relationships. The post showed the following text to an account registered to a thirteen-year-old:

> Fauxcest kink? Oh so the emotional neglect of your parents left you deeply emotionally lonely? You wanna feel the love of someone who's known you forever and loves you regardless? You want them to love you so much, they fuck you when they know they shouldn't? Ah, I see. Pretty fucked up. C'mere kiddo.

84.     Although Instagram permits thirteen-year-old users to easily access and view these photos, videos, and text posts without limit, some users do what Instagram refuses to do: actually putting a warning on their *own* posts, noting that content is "nsfw" or should be watched "with caution" or with a "parental advisory." These warnings provide no limit whatsoever to a thirteen-year-old user's ability to access such content.

85.     Despite all of this, Defendants tell consumers in the App Store that "sexual content and nudity" is "infrequent/mild" on the platform. That representation is false, misleading, and deceptive.

*Mature/suggestive themes*.

86.      "Mature/suggestive themes" include content related to the topics already described—alcohol, tobacco, drugs, sex, nudity, profanity, and crude humor—as well as other complex themes that are suitable only for adult audiences.

87.      "Mature/suggestive themes" are not "mild/infrequent" on Instagram.

88.     The recent investigation by The Wall Street Journal and researchers at Stanford University and the University of Massachusetts Amherst proves as much. The investigation uncovered that "Instagram, the popular social-media site owned by Meta Platforms, helps connect and promote a vast network of accounts openly devoted to the commission and purchase of underage-sex content."[37]

> The researchers found that Instagram enabled people to search explicit hashtags such as #pedowhore and #preteensex and connected them to accounts that used the terms to advertise child-sex material for sale. Such accounts often claim to be run by the children themselves and use overtly sexual handles incorporating words such as 'little slut for you.'[38]

89.     Defendants actively promote child pornography on Instagram. "Pedophiles have long used the internet, but unlike the forums and file-transfer services that cater to people who have interest in illicit content, Instagram doesn't merely host these activities. Its algorithms promote them."[39] "Test accounts set up by researchers that viewed a single account in the [child

---

[37] *Id.*

[38] *Id.*

[39] *Id.*

abuse] network were immediately hit with 'suggested for you' recommendations of purported child-sex-content sellers and buyers, as well as accounts linking to off-platform content trading sites."[40] "Following just a handful of [Instagram's] recommendations was enough to *flood* a test account with content that sexualizes children."[41]

90.     Underage sex content is prevalent and easily accessible on Instagram. "Current and former Meta employees who have worked on Instagram child-safety initiatives estimate the number of accounts that exist primarily to follow such content is in the high hundreds of thousands, if not *millions*."[42] And a "Meta spokesman" stated that the company removed "490,000 accounts for violating its child safety policies in January alone."[43]

91.     The researchers, comparing Instagram to other social media platforms, concluded that "the problem [with child pornography] on Instagram is particularly severe."[44]

92.     Defendants know that their product displays, and in some cases promotes, child pornography content. "In many cases, Instagram has permitted users to search for terms that its own algorithms know may be associated with illegal material."[45] In such cases, Defendants *still* permitted users to access the child pornography content. "[A] pop-up screen for users warned that 'These results may contain images of child sexual abuse,' . . . [t]he screen offered two options for users: 'Get resources' and 'See results anyway.' "[46] Only after the Wall Street Journal's

---

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

investigation did Defendants change their practice of identifying child pornography and then prompting its users to "see results anyway."[47]

93.     Even when users make Defendants aware of child pornography content on Instagram, such content goes unaddressed by Defendants. "Earlier this year, an anti-pedophile activist discovered an Instagram account claiming to belong to a girl selling underage-sex content, including a post declaring, 'This teen is ready for you pervs.'"[48] "When the activist reported the account, Instagram responded with an automated message saying: 'Because of the high volume of reports we receive, our team hasn't been able to review this post.' "[49] "After the same activist reported another post, this one of a scantily clad young girl with a graphically sexual caption, Instagram responded, 'Our review team has found that [the account's] post does not go against our Community Guidelines.' The response suggested that the user hide the account to avoid seeing its content."[50]

94.     Defendants are aware that their product leads young people, especially girls and young women, to mental health crises including self-harm and—in many cases—suicide. In one internal presentation later leaked to the public, Defendants stated that: "Among teens who reported suicidal thoughts, 13% of British users and 6% of American users traced the desire to kill themselves to Instagram."[51]   "Repeatedly, [Defendants' own] researchers found that Instagram is harmful for a sizable percentage of [young users], most notably teenage girls."[52] Defendants stated:

---

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] Georgia Wells, Jeff Horwitz, & Deepa Seetharaman, *Facebook Knows Instagram Is Toxic for Teen Girls, Company Documents Show*, WALL ST. J. (Sept. 14, 2021), https://on.wsj.com/3uEkt5s.

[52] *Id.*

"We make body image issues worse for one in three teen girls."[53] Instagram even promotes content that explicitly references and in some cases encourages self-harm and suicide. One comprehensive study found that: "Looking into purposive samples of Instagram posts tagged with self-harm related hashtags, studies report finding self-harm or suicide content in between 9–66% of their studied posts."[54] "Studies assessing Instagram's efforts to tackle such content found they had not been very effective."[55]

95.    Defendants are also aware that teenagers suffer sexual extortion scams on Instagram. An investigation by the Washington Post revealed a practice on Instagram by which one user, posing as a teenager, messages a teen user to request sexual photos. Once the teenager sends the photos, the user then extorts the teenager for money, threatening to release the incriminating sexual photos if the teenager does not comply.[56] The investigation cited "more than 10,000 tips of financial sextortion of minors, primarily boys, in 2022[.]"[57] "By the end of July 2023," a clearinghouse for reports of abuse had received "12,500 reports . . . with more continuing to pour in."[58] Instagram is aware of the harms of this mature content on its app. "At least a dozen boys died by suicide in 2022, after they were blackmailed, according to the FBI."[59]

96.    The State's own research using a test account reveals that Instagram frequently depicts mature content, including extreme violence. The State's test account was frequently shown

---

[53] *Id.*

[54] Jacobo Picardo, et al., *Suicide And Self-Harm Content On Instagram: A Systematic Scoping Review*, NIH: NAT'L LIBRARY OF MEDICINE (Sept. 2, 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7467257/.

[55] *Id.*

[56] Chris Moody, *'IDK what to do': Thousands of teen boys are being extorted in sexting scams*, WASH. POST (Oct. 2, 2023), https://wapo.st/49WbNHL.

[57] *Id.*

[58] *Id.*

[59] *Id.*

videos and photographs of fatal accidents. For example, one video depicted from the point of view of a motorcyclist shows a large vehicle flying toward the camera and crushing the motorcyclist. Other videos show young men jumping off of cliffs and other high surfaces, or running into oncoming vehicles and being injured. One video showed a motorcycle colliding with an oncoming car with the text "Suicide?" Another video showed an oncoming car being run over by a train with the text "instant death." Defendants provide *no* warning about violence in the description of Instagram's 12+ rating in the App Store—not even listing violence as mild/infrequent, as it does with the other categories of harmful content. Defendants thus falsely represent that there is no violence on the Instagram app.

97.     Public reporting reveals that Instagram knowingly depicts mature content related to body dysmorphia and eating disorders.[60] An internal presentation conducted by Defendants revealed that: "We make body image issues worse for one in three teen girls."[61] Once a young user has expressed interest in content related to body image or eating disorders, the app continues to recommend such content, creating a spiral for the young user. As the Wall Street Journal reported, internal documents revealed that "Facebook is acutely aware that the products and systems central to its business success routinely fail. . . . The documents also show that Facebook has made minimal efforts to address these issues and plays them down in public."[62]

98.     Despite all of this, Defendants tell consumers in the App Store that "mature/suggestive themes" are "infrequent/mild" on the platform. That representation is deceptive and misleading.

---

[60] Georgia Wells, Jeff Horwitz, & Deepa Seetharaman, *Facebook Knows Instagram Is Toxic for Teen Girls, Company Documents Show*, WALL ST. J. (Sept. 14, 2021), https://on.wsj.com/3uEkt5s.

[61] *Id.*

[62] *Id.*

## GOOGLE PLAY AND MICROSOFT STORES

99.     Defendants also make the Instagram app available in the Google Play and Microsoft Stores. To do so, Defendants are required to answer age-rating questions by self-reporting details about the content and features available on Instagram. Defendants respond to these age-rating questions in a way that allows them to claim a "T for Teen" age rating for Instagram. Defendants know and intend that Google and Microsoft will convey the "T" for "Teen" age rating to consumers on Instagram's behalf. A "T" for "Teen" rating is defined as: "Content is generally suitable for ages 13 and up. May contain violence, suggestive themes, crude humor, minimal blood, simulated gambling and/or infrequent use of strong language." By contrast, an "M" for "Mature" rating is defined as: "Content is generally suitable for ages 17 and up. May contain intense violence, blood and gore, sexual content and/or strong language."[63]

100.    This content is prevalent on Instagram. "Current and former Meta employees who have worked on Instagram child-safety initiatives estimate the number of accounts that exist primarily to follow [sexualized child] content is in the high hundreds of thousands, if not millions."[64]

101.    As already described, the content on Instagram is not "generally suitable for ages 13 and up" and does not include only the "infrequent use of strong language." Instagram contains "intense … sexual content and/or strong language." Instagram's choice to claim a "T for Teen" rating in the Google Play and Microsoft Stores is deceptive and unfair. Instagram can accurately claim only an "M for Mature" rating in the Google Play and Microsoft Stores.

---

[63] *Apps & Games content ratings on Google Play*, GOOGLE PLAY (last visited Nov. 30, 2023), https://bit.ly/4advjzV.

[64] Jeff Horwitz & Katherine Blunt, *Instagram Connects Vast Pedophile Network*, WALL ST. J. (June 7, 2023), https://on.wsj.com/47zZI9O.

## COMMUNITY GUIDELINES

102.    Instagram's Community Guidelines inform users about what content Instagram permits. Instagram tells its users: "If you see something that you think may violate our guidelines, please help us by using our built-in reporting option. We have a global team that reviews these reports and works as quickly as possible to remove content that doesn't meet our guidelines."[65] Defendants largely rely on users to police and report harmful content, claiming that "[m]any disputes and misunderstandings can be resolved directly between members of the community." *Id.*

103.    Specifically, the Community Guidelines state:

- "We know that there are times when people might want to share nude images that are artistic or creative in nature, but for a variety of reasons, we don't allow nudity on Instagram. This includes photos, videos, and some digitally-created content that show sexual intercourse, genitals, and close-ups of fully-nude buttocks. It also includes some photos of female nipples, but photos in the context of breastfeeding, birth giving and after-birth moments, health-related situations (for example, post-mastectomy, breast cancer awareness or gender confirmation surgery) or an act of protest are allowed. Nudity in photos of paintings and sculptures is OK, too."[66]

- "We also remove content that attempts to trade, co-ordinate the trade of, donate, gift, or ask for non-medical drugs, as well as content that either admits to personal use (unless in the recovery context) or coordinates or promotes the use of non-medical drugs."[67]

- The Community Guidelines do not mention profanity.

104.    As already alleged, drug-related and sexual content and other mature content and profanity is abundant on Instagram and is not restricted to users aged 18 and older. The Community Guidelines are deceptive and unfair because they mislead users into believing this content is not

---

[65] *Community Guidelines*, INSTAGRAM HELP CENTER (last visited Nov. 30, 2023), https://bit.ly/46y3fnL.

[66] *Id.*

[67] *Id.*

available on Instagram. The Community Guidelines also fail to warn users and parents about the intensity or frequency of mature and vulgar content on Instagram, including pornography.

105.    Defendants also publicly misrepresent the degree and frequency with which Instagram's Community Guidelines are violated. In particular, Meta has publicly represented that the statistics in its Community Standard Enforcement Reports are a reliable measure of the safety of its platforms.[68]

## PUBLIC STATEMENTS

106.    Defendants have made numerous deceptive public statements to Montana consumers about Instagram's age ratings, content moderation, and children's use of the app.

107.    Head of Instagram Adam Mosseri testified: "If a child is under the age of 13, they are not permitted on Instagram. When we learn someone underage has created an account, we remove them."[69]

108.    Mosseri assured the public that Instagram has "put in place multiple protections to create safe and age-appropriate experiences for people between the ages of 13 and 18."[70] And that Instagram "create[s] age-appropriate experiences for teenagers on Facebook and Instagram," through "age gating certain content, prohibiting certain types of ads from being served to minors, and limiting options for serving any ads to these users."[71] He also advertised a "new experience"

---

[68] *Measuring Prevalence of Violating Content on Facebook*, META NEWS (May 23, 2019), https://bit.ly/47HTzsg.

[69] *Hearing Before the United States Senate Committee on Commerce, Science, and Transportation Subcommittee on Consumer Protection, Product Safety, and Data Security, Testimony of Adam Mosseri*, at 2 (Dec. 8, 2021), https://bit.ly/46Yon73.

[70] *Id.* at 2.

[71] *Id.* at 3.

on Instagram that "will make it harder for young people to find potentially sensitive content on Instagram."[72]

109.    Instagram tells the public: "When we find content (example: post, comment, story) that goes against our Community Guidelines, we remove it from Instagram."[73] Instagram further assures its users: "Our Community Guidelines define what is and isn't allowed on Instagram, and they apply all over the world."[74]

110.    Other examples of deceptive public statements abound. (1) In 2021, Antigone Davis, Vice President and Global Head of Safety for Meta, testified to Congress, "We have put in place multiple protections to create safe and age-appropriate experiences for people between the ages of 13 and 17."[75]; (2) Also in 2021, Davis testified: "we don't allow young people to see certain types of content. And we have age gating around certain types of content."[76]; (3) Davis stated: "When it comes to those between 13 and 17, We consult with experts to ensure that our policies properly account for their presence[, f]or example, by age-getting content."[77]

111.    An Instagram spokesperson told a news outlet that Instagram has "zero tolerance when it comes to content that puts the safety of our community at risk."[78]

---

[72] *Id.*

[73] *How Instagram Uses Artificial Intelligence to Moderate Content*, INSTAGRAM HELP CENTER, (last visited Nov. 30, 2023), https://bit.ly/3TbHBCq.

[74] *Id.*

[75] Taylor Hatmaker, *Instagram's Adam Mosseri Defends the App's Teen Safety Track Record to Congress*, TECHCRUNCH (Dec. 8, 2021), https://tcrn.ch/3sMB4ni.

[76] *Facebook Head of Safety Testimony on Mental Health Effects: Full Senate Hearing Transcript*, REV (Sept. 30, 2021), https://bit.ly/47Z4MnZ.

[77] *Id.*

[78] *Facebook shuts down drug hashtags on Instagram*, CBS NEWS (Apr. 18, 2018), https://cbsn.ws/4113Wog.

112.     An Instagram spokesperson told another news outlet that pornography is "strictly forbidden on the site."[79]

113.     As already alleged, drug-related, sexual, and other mature content and profanity is abundant on Instagram and is not restricted to users aged 18 and older. These public statements to the contrary are deceptive and unfair because they mislead users into believing this content is not available on Instagram. Instagram's public statements also fail to warn users and parents about the intensity or frequency of mature and vulgar content on Instagram, including pornography.

## RELEVANCE TO PARENTS

114.     Defendants' misrepresentations—the age ratings, associated public statements, assurances in the Community Guidelines, and related omissions—are material to the decisions that parents and other consumers make about whether and how to use the Instagram app. Just as a parent might determine which movies are appropriate for their children based on the "rating" a movie receives (G, PG, PG-13, or R), so too do parents check the age rating of apps before allowing their children to download and use them. Parents may supervise their children's devices to see which apps their children are downloading, or they can use parental controls to prevent their children from downloading apps with particular age ratings. For example, a parent may use parental controls on a 13-year-old's iPhone to automatically prevent the 13-year-old child from

---

[79] Lauren C. Williams, *Why Did Instagram Ban 'Curvy'?*, THINKPROGRESS (July 19, 2015), https://bit.ly/3sOfH4Z .

downloading any app with a 17+ age rating. Parents also read information about apps before allowing their children to download them, and they research apps' parental control features.

115.    Defendants' deceptive age ratings and the other deceptive statements identified herein are aimed at preventing parents who are unfamiliar with the content on Instagram from developing and acting on such concerns.

## ALLEGATIONS COMMON TO ALL STATE-LAW COUNTS

116.    The Montana Consumer Protection Act provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Mont. Code § 30-14-103.

117.    By advertising and offering the Instagram app for general consumers on multiple platforms in exchange for valuable consideration, Defendants engage in "trade or commerce" as defined by Mont. Code § 30-14-103.

118.    Instagram has and is engaged in "deceptive act[s] or practice[s]," *id.*, in several independent ways by making false, misleading, and deceptive representations related to the age rating of its app, and through the willful exaggeration of material facts, and through the omission of material facts regarding the content and features available on its app.

119.    The MCPA states that: "It is the intent of the legislature that in construing 30-14-103 due consideration and weight shall be given to the interpretations of the federal trade commission and the federal courts relating to section 5(a)(1) of the Federal Trade Commission Act." Mont. Code Ann. § 30-14-104(1). The FTC in turn defines "deceptive" to mean "likely to mislead consumers acting reasonably under the circumstances." *See Enforcement Policy Statement on Deceptively Formatted Advertisements*, at 1, FED. TRADE COMMISSION (2015), available at https://bit.ly/3N3k1nN; *see also FTC Policy Statement on Deception*, at 1, FED. TRADE COMMISSION (1983), https://tinyurl.com/4k2kfcbu.

35

120.    Instagram's deceptive, misleading, and unfair acts and practices are material to the decisions of parents and other Instagram users. Instagram users care about the type and maturity of content and features available on Instagram when deciding whether and how to use (or whether and how to let their children use) the app.

## CLAIMS

## COUNT I

**Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. § 6501, ch. 91 *et seq.***

121.    The Children's Online Privacy Protection Act ("COPPA") requires operators of certain online services to obtain parental consent before collecting personal information from children online.

122.    An "operator" subject to COPPA includes "any person who operates a website located on the Internet or an online service and who collects or maintains personal information from or about the users of or visitors to such website or online service . . . where such website or online service is operated for commercial purposes[.]" By operating the Instagram app, an online service that maintains personal information for commercial purposes, defendants qualify as "operators" under COPPA. 15 U.S.C. § 6501(2)(A).

123.    The term "child" is defined as a person under the age of 13. *See* 15 U.S.C. § 6501(1).

124.    Defendants repeatedly violate COPPA by collecting personal information from children on Instagram without first obtaining or even attempting to obtain informed parental consent, as COPPA requires.

125.    COPPA prohibits social media operators from collecting personal information about children without "verifiable parental consent" when either of the following two conditions

36

is met: (a) the operator has "actual knowledge" that it is collecting personal information from a child; or (b) the operator's service is "directed to children." 15 U.S.C. § 6502(a)(1).

126.    "Verifiable parental consent" includes providing notice of the operator's "personal information collection, use, and disclosure practices," 15 U.S.C. § 6501, and requires the operator to secure the parent's authorization for the operator to collect, use, or disclose the child's information *before* the operator collects the child's information.

127.    "Personal information" includes "individually identifiable information about an individual collected online," including the child's name, address, email address, personal identifiers, geolocation information, and photographs or videos. 15 U.S.C. § 6501(1), (8); 16 C.F.R § 312.2. Defendants collect personal information of this sort from all registered users of Instagram, including children.

128.    Defendants' activities trigger COPPA's requirement for verifiable parental consent in two independent ways. First, Defendants routinely obtain "actual knowledge" of Instagram users under the age of 13. Defendants are both generally aware that a substantial proportion of children under 13 use Instagram and specifically aware in individual cases that certain users are under 13 years of age. Separately, through their marketing and promotion of topics of interest to children and the use of child celebrities, Defendants target children as Instagram users, making the platform "directed to children." *See* 16 C.F.R. § 312.2.

129.    Defendants do not even attempt to secure verifiable parental consent before collecting personal information about its users under the age of 13.

130.    Defendants instead claim that users under 13 years of age are not permitted to use Instagram. Yet that false assurance is belied by evidence of Defendants' actual knowledge that users under 13 years of age can and do often lie about their age in order to access the app.

131.    Until December 2019, Instagram had *no* requirement for users to confirm their age before creating an Instagram account. Users under the age of 13 did not even need to falsely report that they were over 13 years of age to participate fully on the app.

132.    Now, Instagram requires new users to enter a date of birth when signing up for an account. But this page allows under-13 users to make several attempts at entering an over-13 date of birth, and only temporarily blocks failed attempts for 12 hours before permitting the under-13 user to try again. Instagram takes no steps to verify a user's attested birthday.

133.    Defendants are aware that Instagram's age registration process provides virtually no security against underage users and that its process regularly elicits false self-reported ages from its child-users. Public reporting confirms that children under the age of 13 regularly use Instagram. In an article discussing Instagram's abandoned launch of a platform for children under 13, the Wall Street Journal noted that "plenty of children under 13 are already using the regular Instagram app."[80] At a congressional hearing, Mark Zuckerberg "acknowledged that plenty of children lie about their age in order to sign up for Instagram."[81] Similarly, Instagram CEO Adam Mosseri has stated that "young users lying about their ages are a problem across the industry."[82]

134.    Defendants know, or have reason to know, that social media usage is common for kids under 13. Roughly 11% of the age group uses Instagram.[83]

135.    Defendants and other social media companies "fiercely compete for young people in general, since they are potentially longtime users, as well as taste makers who help platforms

---

[80] Jeff Horwitz, *Instagram's Plan for Kids Met With Hostile Response*, WALL ST. J. (Apr. 7, 2021), https://on.wsj.com/3QrMKEE.

[81] *Id.*

[82] *Id.*

[83] *Id.* (citing a survey by investment research firm Piper Sandler).

remain relevant in pop culture."[84] "Advertisers also tend to prioritize spending on platforms with younger users."[85]

136.    Defendants have repeatedly and systematically failed to provide notice to parents about the information Instagram collects from children and how such is used and disclosed, as required by Sections 312.4(b) and 312.4(c) of COPPA. *See* 16 C.F.R. § 312.4(b)–312.4(c). Defendants have likewise failed to obtain verifiable parental consent prior to collecting or using any personal information of children, in violation of Section 312.5 of COPPA. *See* 16 C.F.R. § 312.5.

137.    A violation of COPPA establishes an unfair or deceptive practice under the FTC Act, 15 U.S. Code § 45. *See* 16 C.F.R. § 312.9. Because the Montana Consumer Protection Act explicitly incorporates the FTC Act, a violation of COPPA likewise establishes an unfair or deceptive practice under the MCPA. *See* Mont. Code § 30-14-104(1).

138.    COPPA empowers State Attorneys General to sue to enforce COPPA's verifiable parental consent requirement. State Attorneys General may obtain injunctive relief, damages, restitution, and other relief on behalf of residents of the State. 15 U.S.C. § 6504.

## COUNT II

**Montana Consumer Protection Act: Unfair and Deceptive Acts or Practices
Mont. Code § 30-14-103, *et seq.***

**Alcohol, Tobacco, and Drug References**

139.    The State repeats and incorporates by reference each and every allegation contained in paragraphs 1-120 as if fully set forth herein.

---

[84] *Id.*

[85] *Id.*

140.    Defendants have represented and are continuing to represent to Montana consumers that the Instagram app contains "infrequent/mild" "Alcohol, Tobacco, or Drug Use or References."

141.    In fact, Defendants know and have reason to know that the Instagram app contains abundant alcohol, tobacco, and drug use or references, which are neither "infrequent" nor "mild" in nature.

142.    Defendants' "infrequent/mild" representation in the App Store is deceptive, willful and false, omits material facts, and, to the extent it is a statement of opinion, is a statement of opinion likely to mislead Montana consumers acting reasonably under the circumstances. Defendants' continuous display of this content to young Montanans constitutes an unfair practice.

143.    The State is entitled to civil penalties not to exceed $10,000 for each violation, in accordance with Mont. Code § 30-14-142.

## COUNT III

**Montana Consumer Protection Act: Unfair and Deceptive Acts or Practices
Mont. Code § 30-14-103, *et seq.***

**Sexual Content and Nudity**

144.    The State repeats and incorporates by reference each and every allegation contained in paragraphs 1-120 as if fully set forth herein.

145.    Defendants have represented and are continuing to represent to Montana consumers that the Instagram app contains "infrequent/mild" "Sexual Content or Nudity."

146.    In fact, Defendants know and have reason to know that the Instagram app contains abundant sexual content and nudity, which is neither "infrequent" nor "mild" in nature, including pornography.

147.    Defendants' "infrequent/mild" representation in the App Store is deceptive, willful and false, omits material facts, and, to the extent it is a statement of opinion, is a statement of

opinion likely to mislead Montana consumers acting reasonably under the circumstances. Defendants' continuous display of this content to young Montanans constitutes an unfair practice.

148.    The State is entitled to civil penalties not to exceed $10,000 for each violation, in accordance with Mont. Code § 30-14-142.

## COUNT IV

### Montana Consumer Protection Act: Unfair and Deceptive Acts or Practices Mont. Code § 30-14-103, *et seq.*

### Mature/Suggestive Themes

149.    The State repeats and incorporates by reference each and every allegation contained in paragraphs 1-120 as if fully set forth herein.

150.    Defendants have represented and are continuing to represent to Montana consumers that the Instagram app contains "infrequent/mild" "Mature/Suggestive Themes."

151.    In fact, Defendants know and have reason to know that the Instagram app contains abundant mature/suggestive themes, which are neither "infrequent" nor "mild" in nature, including extreme violence, content related to eating disorders, and content related to suicide or other harmful content that ultimately leads young people to suicide.

152.    Defendants' "infrequent/mild" representation in the App Store is deceptive, willful and false, omits material facts, and, to the extent it is a statement of opinion, is a statement of opinion likely to mislead Montana consumers acting reasonably under the circumstances. Defendants' continuous display of this content to young Montanans constitutes an unfair practice.

153.    The State is entitled to civil penalties not to exceed $10,000 for each violation, in accordance with Mont. Code § 30-14-142.

## COUNT V

### Montana Consumer Protection Act: Unfair and Deceptive Acts or Practices
### Mont. Code § 30-14-103, *et seq.*

### Profanity or Crude Humor

154.    The State repeats and incorporates by reference each and every allegation contained in paragraphs 1-120 as if fully set forth herein.

155.    Defendants have represented and are continuing to represent to Montana consumers that the Instagram app contains "infrequent/mild" "Profanity or Crude Humor."

156.    In fact, Defendants know and have reason to know that the Instagram app contains abundant profanity and crude humor, which is neither "infrequent" nor "mild" in nature.

157.    Defendants' "infrequent/mild" representation in the App Store is deceptive, willful and false, omits material facts, and, to the extent it is a statement of opinion, is a statement of opinion likely to mislead Montana consumers acting reasonably under the circumstances. Defendants' continuous display of this content to young Montanans constitutes an unfair practice.

158.    The State is entitled to civil penalties not to exceed $10,000 for each violation, in accordance with Mont. Code § 30-14-142.

## COUNT VI

### Montana Consumer Protection Act: Unfair and Deceptive Acts or Practices
### Mont. Code § 30-14-103, *et seq.*

### 12+ Age Rating

159.    The State repeats and incorporates by reference each and every allegation contained in paragraphs 1-120 as if fully set forth herein.

160.    Defendants have represented and are continuing to represent to Montana consumers that the Instagram app qualifies for a "12+" rating in the Apple App Store.

42

161.    In fact, Defendants know and have reason to know that the Instagram app does not qualify for a "12+" rating in the Apple App Store and can only be accurately rated "17+" in the Apple App Store.

162.    Defendants' "infrequent/mild" representation in the App Store is deceptive, willful and false, omits material facts, and, to the extent it is a statement of opinion, is a statement of opinion likely to mislead Montana consumers acting reasonably under the circumstances. Defendants' continuous display of this content to young Montanans constitutes an unfair practice.

163.    Defendants' representation that there is *no* violence in its App Store rating description is deceptive, willful and false, omits material facts, and, to the extent it is a statement of opinion, is a statement of opinion likely to mislead Montana consumers acting reasonably under the circumstances. Defendants' continuous display of violent content to young Montanans constitutes an unfair practice.

164.    The State is entitled to civil penalties not to exceed $10,000 for each violation, in accordance with Mont. Code § 30-14-142.

## COUNT VII

**Montana Consumer Protection Act: Unfair and Deceptive Acts or Practices
Mont. Code § 30-14-103, *et seq.***

**T for Teen Age Rating**

165.    The State repeats and incorporates by reference each and every allegation contained in paragraphs 1-120 as if fully set forth herein.

166.    Defendants have represented and are continuing to represent to Montana consumers that the Instagram app qualifies for a "T for Teen" age rating in the Google Play Store and Microsoft Store.

167.    In fact, Defendants know and have reason to know that the Instagram app does not qualify for a "T for Teen" age rating on those platforms and can only be accurately rated as "M for Mature" (meaning that the Instagram app is appropriate only for users aged 17 and older).

168.    Defendants' "T for Teen" age-rating representation is deceptive, willful and false, omits material facts, and, to the extent it is a statement of opinion, is a statement of opinion likely to mislead Montana consumers acting reasonably under the circumstances. Defendants' continuous display of this content to young Montanans constitutes an unfair practice.

169.    The State is entitled to civil penalties not to exceed $10,000 for each violation, in accordance with Mont. Code § 30-14-142.

## COUNT VIII

### Montana Consumer Protection Act: Unfair and Deceptive Acts or Practices
### Mont. Code § 30-14-103, *et seq.*

### Cumulative Deceptive and Unfair Representations

170.    The State repeats and incorporates by reference each and every allegation contained in paragraphs 1-120 as if fully set forth herein.

171.    Defendants have represented and continue to represent to Montana consumers that the Instagram app contains only "infrequent/mild" "Alcohol, Tobacco, and Drug Content," "Sexual Content and Nudity," "Suggestive and Mature Themes," and "Profanity or Crude Humor"; that the app is rated "12+" and is appropriate for children 12 and older; and that the app is rated "T" for "Teen" and is appropriate for teenagers.

172.    Defendants know, and have reason to know, that all of those representations are deceptive, false, misleading, omit material facts, and to the extent they are a statement of opinion, are likely to mislead Montana consumers acting reasonably under the circumstances. Those representations are not only deceptive and unfair individually, but *cumulatively*.

173.   The State is entitled to civil penalties not to exceed $10,000 for each violation, in accordance with Mont. Code § 30-14-142.

## COUNT IX

**Montana Consumer Protection Act: Unfair and Deceptive Acts or Practices**
**Mont. Code § 30-14-103, *et seq.***

### Instagram Community Guidelines

174.   The State repeats and incorporates by reference each and every allegation contained in paragraphs 1-120 as if fully set forth herein.

175.   Through Instagram's Community Guidelines, Defendants represent to Montana consumers that Instagram enforces the Community Guidelines and that certain drug-related and sexual content is not allowed to remain on Instagram.

176.   In fact, Defendants know and have reason to know that: content that violates the Community Guidelines remains on Instagram and is widely viewed. Through the Community Guidelines, Defendants represent and have represented that certain drug-related and sexual content is not allowed on Instagram, when such content *is* allowed. Defendants know that they permit mature content on the platform that they fail to disclose to consumers in the Community Guidelines.

177.   Defendants' misrepresentations in the Community Guidelines are deceptive, willful and false, omits material facts, and, to the extent it is a statement of opinion, is a statement of opinion likely to mislead Montana consumers acting reasonably under the circumstances. Defendants' continuous display of this content to young Montanans constitutes an unfair practice.

178.   The State is entitled to civil penalties not to exceed $10,000 for each violation, in accordance with Mont. Code § 30-14-142.

## COUNT X

**Montana Consumer Protection Act: Unfair and Deceptive Acts or Practices**
**Mont. Code § 30-14-103, *et seq.***

**Defendants' Public Statements**

179.   The State repeats and incorporates by reference each and every allegation contained in paragraphs 1-120 as if fully set forth herein.

180.   Through Defendants' numerous public statements, Defendants represent to Montana consumers that Instagram moderates content such that mature or prohibited content is not allowed to remain on Instagram.

181.   In fact, Defendants know and have reason to know that these public assurances are deceptive. Mature content, including pornography, remains on Instagram and is widely viewed.

182.   Defendants' public statements to the contrary are deceptive, willful and false, omit material facts, and, to the extent they are statements of opinion, are likely to mislead Montana consumers acting reasonably under the circumstances. Defendants' continuous display of this content to young Montanans despite their public statements constitutes an unfair practice.

183.   The State is entitled to civil penalties not to exceed $10,000 for each violation, in accordance with Mont. Code § 30-14-142.

## COUNT XI

**Montana Consumer Protection Act: Unfair and Deceptive Acts or Practices**
**Mont. Code § 30-14-103, *et seq.***

**Addictiveness and Harmful Design Features**

184.   The State repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

185.   Defendants have engaged in unfair acts or practices by creating and marketing an app that is intentionally addictive to young people. Defendants have also committed deceptive acts

46

or practices by telling the public both explicitly and implicitly that its app is safe and appropriate for users under age 17, even though its app is actually addictive to these minors.

186.   Defendants' unfair and deceptive acts or practices in relation to addictiveness include but are not limited to selecting a "12+" rating in the App Store and a "T" for "Teen" rating in the Google Play and Microsoft Stores.

187.   Defendants' other public-facing statements implicitly and explicitly deceive consumers by communicating that their product is safe and appropriate for minors.

188.   Defendants have not informed the public at any time that Instagram is addictive— let alone that Defendants have intentionally designed their app to be addictive—or that young users are particularly susceptible to its addictive qualities.

189.   By creating an app that is intentionally addictive to young people and placing it into the stream of commerce, all without warning consumers of its addictiveness (and particularly, its addictiveness to minors), Defendants have engaged in unfair acts or practices trade practices in violation of Montana Code § 30-14-103.

190.   These practices are material to the decisions of parents and others because Instagram users care about the coercive effects and addictive nature of the app when deciding whether and how to use (or let their children use) the app.

191.   Defendants have engaged in these actions knowingly. Instagram has intentionally designed its app to be addictive and is aware that it has an addictive effect on users, particularly minors.

192.   This addiction harms Montana minors by substantially affecting their mental health and other aspects of their social growth and wellbeing.

193.    Each Defendant knew or reasonably should have known of the facts described here. Thus, each Defendant is jointly and severally liable for any and all penalties and money damages awarded.

194.    The State is entitled to a preliminary and permanent injunction prohibiting Defendants from continuing to make misrepresentations and omissions about the addictive qualities of its app to Montana consumers.

195.    The State is entitled to civil penalties not to exceed $10,000 for each violation, in accordance with Mont. Code § 30-14-142.

## PRAYER FOR RELIEF

WHEREFORE, the State of Montana, *ex rel.* Austin Knudsen, Attorney General, prays for judgment against Defendants for each of the causes of action raised herein. The State respectfully requests that the Court enter judgment in its favor and that the Court:

A.    Declare that Instagram's actions are deceptive and unfair to Montana consumers under Mont. Code § 30-14-103, *et seq.*;

B.    Preliminarily and permanently enjoin Defendants from continuing to treat Montana consumers unfairly and deceptively in the ways described in these allegations, in accordance with Mont. Code § 30-14-111(4);

C.    Award the State civil penalties of not more than ten thousand dollars for each violation of the MCPA, in accordance with Mont. Code § 30-14-142.

D.    Award the State the expenses for expert witnesses, reasonable and necessary costs incurred in pursuing this action, including reasonable attorneys' fees, and prejudgment and post-judgment interest at the highest lawful rates, in accordance with Mont. Code § 30-14-131(2);

E.       Declare that each Defendant is jointly and severally liable for any and all penalties and money damages awarded;

F.       The State demands a jury trial; and

G.       Grant such other and further relief as this Court deems just and appropriate.

Date: December 1, 2023                              Respectfully submitted,

                                                    AUSTIN KNUDSEN
                                                    ATTORNEY GENERAL

                                                    By: _____

                                                    Anna K. Schneider
                                                    Montana Attorney General's Office
                                                    Bureau Chief
                                                    Office of Consumer Protection
                                                    P.O. Box 201405
                                                    Helena, MT 59620-1405
                                                    (406) 444-4500
                                                    anna.schneider@mt.gov

                                                    David H. Thompson*
                                                    Michael W. Kirk*
                                                    Brian W. Barnes*
                                                    Megan M. Wold*
                                                    Athanasia O. Livas*
                                                    COOPER & KIRK, PLLC
                                                    1523 New Hampshire Ave., N.W.
                                                    Washington, D.C. 20036
                                                    Tel: (202) 220-9600
                                                    Fax: (202) 220-9601

                                                    *Counsel for Plaintiff, State of Montana*

                                                    *Applications for admission *pro hac vice* forthcoming